## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:                                    ) | |
|                                           ) | Chapter 7 |
| CRAIG A. LORENZ,                          ) | Case No. 03-47259-JBR |
|                                           ) | |
|         Debtor                            ) | |
|                                           ) | |
| Craig Lorenz,                             ) | |
|                                           ) | |
|         Plaintiff                         ) | |
|                                           ) | |
| v.                                        ) | Adv. Pro. No. 04-4305 |
|                                           ) | |
| American Education Services/Pennsylvania  ) | |
| Higher Education Assistance Agency,       ) | |
|                                           ) | |
|         Defendant                         ) | |

### Memorandum of Decision on Discharge of Student Loan Obligations

The facts in this matter are essentially undisputed. Craig A. Lorenz ("Debtor") is indebted to the Defendant in the approximate sum of $72,000 for guaranteed student loans which the parties agree are non-dischargeable except for a finding in this proceeding of "undue

1

hardship" under 11 U.S.C. § 523(a)(8). These student loans were used to finance Debtor's podiatry school education. In addition to these student loans, the Debtor is also obligated on approximately $82,000 of HEAL loans which are not dischargeable. Although the Debtor obtained a podiatry license and practiced for a few years, changes in the field, driven by factors such as federal reimbursement policies, made podiatry less lucrative than originally anticipated by the Debtor, and he abandoned that career path. We now find the Debtor, a 39 year old recent graduate as a registered nurse, unemployed as of the trial, but with hopes of a reasonable income, with a starting salary (per the Debtor's testimony) of probably $46,000 per year.

There is uncontroverted testimony in the record of substantial ($45,000+/-) payments on Debtor's student loans over the years after podiatry school, however, the testimony is less than clear whether there were payments on the HEAL loans, the loans subject to this Adversary Proceeding, or some combination of both.

This Court has relied on the "totality of the circumstances" test articulated in *Kopf v. United States Dept. of Educ.*, 245 B.R. 731, 739 (Bankr. D. Me. 2000). *Dolan v. American Student Assistance, et al.*, 256 B.R. 203, 238 (Bankr. D. Mass. 2000). In *Dolan* the Court determinated that a debtor attempting to discharge student loans under § 523(a)(8) "must prove by a preponderance of the evidence, that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other relevant facts or circumstances particular to the debtor's case are such that excepting the student loans from discharge will prevent the debtor from maintaining a minimal standard of living, even with the advantage of a discharge of his other pre-petition debts." *Dolan*, 256 B.R. at 238. The Court must determine, by making specific findings as to each of these matters, if

2

excepting the Debtor's student loans from discharge will impose an "undue hardship" on the Debtor and his dependents.

Although the Debtor's present income is clearly insufficient to pay his student loan, the real issue here is whether the Debtor has proven to the Court's satisfaction that his prospects for increasing his future income are such to warrant discharge of his student loans. *In re Greco*, 251 B.R. 670, 675 (Bankr. E.D. Pa. 2000). Courts have stated that unemployment or even underemployment are insufficient per se to establish undue hardship. *Healy v. Massachusetts Higher Educ.*, 161 B.R. 389 (Bankr. E.D. Mich. 1993). This Court stated that financial adversity is not sufficient to have a student loan debt discharged on the basis of undue hardship and there must be additional unique circumstances. *Bloch v. Windham Professionals, et al.*, 257 B.R. 374 (Bankr. D. Mass. 2001). One must be suffering from truly severe, and even uniquely difficult circumstances in order to demonstrate undue hardship. *Craig v. Pennsylvania Higher Education Assistance Agency*, 64 B.R. 854, 857 (Bankr. W.D. Pa. 1986).

This test may lead to some rather severe results, *see Bourque v. ECMC (In re Bourque)*, 303 B.R. 548 (Bankr. D. Mass. 2003), which the Defendant urges me to follow. That case is, however, clearly distinguishable, based both on the facts and the amount of student loan debt involved. In *Bourque*, less than $14,000 of loan was involved. Here we have more than ten times that amount with over $82,000 already determined to be nondischargeable. There the Debtor was ten years younger than in the instant case.

Looking at the Debtor's income prospects, the Court assumes that the Debtor will be gainfully employed shortly as a registered nurse. The Debtor testified that he expects his starting salary to be about $46,000 per year, which the Court determines would yield approximately $2,874.75 of available funds to the Debtor on a monthly basis:

3

Income: $46,000 ÷ 12 = $3,833 - 25% Taxes, etc. = $2,874.75

The only other evidence relating to Debtor's probable income were the wage statistics proffered by the Defendant (Exhibit 2). Although no witness testified to these statistics, and no substantive information was provided, the Court assumes that the "Worcester, MA-CT PMSA" chart represents the most likely region in which Debtor will be working. Accepting the mean annual salary for this analysis, Debtor's anticipated income would be:

$55,140 ÷ 12 = $4595 – 25% Taxes, etc. = $3,446.25

The Court concludes, after reviewing the Debtor's testimony, both on direct and cross-examination, as well as his Schedule J[1] (admitted into evidence as part of Defendants Exhibit 3) that the Debtor's monthly expenses are approximately $2,200. The $2,200 includes rent or mortgage payment – the Defendant challenged this number, but "shelter" is a necessary expense and the Court finds $850.00 is a reasonable shelter cost. Some of the Debtor's figures seemed slightly high to the Court but were not challenged by the Defendant. Considering all of the expenses on Schedule J, the Court concludes that $2,200 is a reasonable starting point. There was testimony that the Debtor's vehicle is now burdened with high mileage, thus the Court recognizes an expense for vehicle repair and/or replacement of at least $150.00 per month. Without leading an unreasonable or extravagant lifestyle, the Court finds the Debtor's expenses are approximately $2,350/month before student loan payments.

The HEAL Loan Payment at 8% per year would yield a monthly payment of approximately $600.00 per month for 360 months (30 years). Thus, before the subject loans are considered, the Debtor's monthly expenses are

---

[1] Schedule I was received but is deemed to be irrelevant at this point in time as the Debtor's income has been non-existent for the past few years and is about to change again.

4

Expenses ($2,350) + HEAL Loans ($600.00) = $2,950.00

The Newmyer affidavit submitted by the Defendant (Exhibit 1) is the only evidence in the record concerning the amount necessary to amortize the loans under consideration here. Although there is no explanation of the "graduated repayment options," it appears that all options call for a 360 month (30 year) amortization[2] at between $490 and $546 per month. Using $525.00 as a rough mid-point, the Debtor's expenses would be:

Expenses $2,350 + HEAL Loans $600 + subject student loans $525 = $3,475.00.

The Court gives no consideration to Defendant's suggestion that the Debtor/Plaintiff "may also be eligible for the Income Contingent Repayment Plan;" with no witness to explain the "may" or the other features of said Plan, including answers to questions such as how the HEAL loan payments figure into the "Plan," the Court cannot speculate whether this Plan would alleviate any "undue hardship" the Court might otherwise find.

Based on the Court's analysis of the future affairs and prospects of the Debtor, whether using the "totality of the circumstances" embraced in the past or reconsidering and adopting the *Brunner* test[3], the Court comes to the same conclusion: it would be an undue hardship for the Debtor to satisfy his student loan obligation, regardless of which income figures are used, as using either set of figures, the Debtor's expenses will exceed his income. Further, the Debtor's lifestyle appears to the Court to be modest. Comparing his expenses to his income, it is clear the

---

[2] The Court recognizes that the loan amortization proposed, 30 years, would take this Debtor until almost age 70, working full time, to amortize the subject loans.

[3] The *Brunner* test requires the Debtor to show that (1) the Debtor is unable, based upon his current income and expenses, to maintain a "minimal" standard of living if she must repay the student loan; (2) other existing circumstances indicate the state of affairs probably will continue for a significant portion of the repayment period of the student loan; and (3) the Debtor has, in good faith, tried to repay the loan. *Brunner v. New York*, 831 F.2d 395, 396 (2d. Cir. 1987).

5

Debtor lacks sufficient funds at the end of each month to meet his student loan obligations without suffering an undue hardship.

For the reasons set forth herein, the Court finds that the Debtor has met his burden under 11 U.S.C. § 523(a)(8) and his non-HEAL consolidated student loan owed to Defendant is deemed dischargeable.

A separate Order will issue.

Dated: June 17, 2005

By the Court,

Joel B. Rosenthal
United States Bankruptcy Judge